UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENEVA LABORATORIES LIMITED, and UNION-SWISS (PROPRIETARY) LIMITED,<br><br>      *Plaintiffs*,<br><br>v.<br><br>SPTJ ENTERPRISE, INC. (d/b/a BEAUTY ZONE); SUZANNA KIM (a/k/a SUSANNA HYON KIM)); SHINE CORP.; KAP SANG KIM (a/k/a KAPSANG KIM); COMPANIES 1-5; and JOHN DOES 1-5,<br><br>      *Defendants*. | DOCUMENT FILED ELECTRONICALLY<br><br>Civil Action No. 1:23-cv-10595-VSB<br><br>**STIPULATED CONSENT JUDGMENT & PERMANENT INJUNCTION ORDER** |

This Stipulated Consent Judgment and Permanent Injunction ("Consent Judgment") is entered into by and between Plaintiffs, Geneva Laboratories Limited ("Geneva Labs") and Union-Swiss (Proprietary) Limited (collectively referred to as "Plaintiffs"), and Defendants, SPTJ Enterprise, Inc. (d/b/a Beauty Zone); Suzanna Kim (a/k/a Susanna Hyon Kim)); Shine Corp.; Kap Sang Kim (a/k/a Kapsang Kim) (collectively referred to as "Defendants"), subject to approval by the Court.

**WHEREAS**, on December 5, 2023, Plaintiffs initiated this action against Defendants alleging willful trademark counterfeiting, trademark infringement, false designation of origin, trademark dilution, unfair competition, unlawful and deceptive acts and practices, unjust enrichment, fraud and civil conspiracy, in violation of the laws of the United States and the statutory and common law of the State of New York;

**WHEREAS**, Defendants wish to conclude this litigation without contesting infringement, validity or enforceability of Plaintiffs' trademarks in this proceeding, and have agreed to cease all use of Plaintiffs' trademarks as set forth herein; and

**WHEREAS**, Plaintiffs and Defendants hereby all agree to the entry of this Consent Judgment.

**NOW, THEREFORE, IT IS HEREBY STIPULATED, ORDERED AND ADJUDGED**:

1. This is an action for trademark counterfeiting and infringement, false designation of origin, trademark dilution, unfair competition, unlawful and deceptive practices, unjust enrichment, fraud and tortious conspiracy, in violation of the trademark laws of the United States, and the statutory and common law of the State of New York.

2. This Court has subject matter jurisdiction over Plaintiffs' federal trademark counterfeiting and infringement, false designation of origin, and trademark dilution claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 (Federal Question), and 1338(a) and (b) (Trademark and Unfair Competition jurisdiction). This Court has subject matter jurisdiction of Plaintiffs' claims that arise under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a) and principles of supplemental jurisdiction. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

3. Defendants consent to the jurisdiction of this Court, and to this Court retaining jurisdiction for the purpose of executing and enforcing this Consent Judgment.

4. Plaintiff Geneva Labs is the owner of all right, title and interest in and to the following federal trademark registrations (hereinafter collectively referred to as the "BIO-OIL® Trademarks") issued by the United States Patent and Trademark Office:

| TRADEMARK | REG. NO. | REG. DATE | GOODS |
|---|---|---|---|
| Bio-Oil | 3029619 | Dec. 13, 2005 | Essential oils for personal use, cosmetics |
| PURCELLIN OIL | 3362509 | Jan. 1, 2008 | Chemical emollient sold as a component ingredient of skin care products, namely skin creams, lotions and oils |
| BIO-OIL | 4454698 | Dec. 24, 2013 | Cosmetics; Essential oils for personal use |
| Bio-Oil | 5387975 | Jan. 23, 2018 | Cosmetics; Essential oils for personal use |

5. Plaintiff Geneva Labs has the sole and exclusive right to manufacture, market, use, sell and otherwise commercialize skincare products under the brands BIO-OIL® and PURCELLIN OIL® by virtue of the foregoing federal trademark registrations.

6. Defendants make, in connection with, and as inducement for the entry of, this Consent Judgment, the following admissions and representations that are material terms of, and form the basis for entry of, this Consent Judgment, and Plaintiffs and the Court have relied upon these admissions and representations:

   a. Defendants acknowledge Plaintiff Geneva Labs' exclusive rights in the BIO-OIL® Trademarks and that the BIO-OIL® Trademarks are valid and enforceable;

   b. Defendants acknowledge that, as a result of the wide renown acquired by the BIO-OIL® Trademarks by virtue of the widespread sales of BIO-OIL® skincare oil used by millions of customers worldwide and the high acclaim attributed to the BIO-OIL® skincare oil, the BIO-OIL® Trademarks have become famous in the mind of the purchasing public within the meaning of 15 U.S.C. § 1125(c), and

exclusively identify the skincare products offered under the BIO-OIL® Trademarks with a single source;

c. Defendants admit, represent and warrant, that: (i) Shine Corp. has never imported any products bearing any BIO-OIL® Trademarks, but Mr. and Mrs. Kim, through Defendant SPTJ Enterprise, Inc., have distributed, offered for sale, and sold in commerce what has been determined to be counterfeit BIO-OIL® skincare oil bearing reproductions of the BIO-OIL® Trademarks (the "Counterfeit Goods"), without authorization or license from Plaintiffs, (ii) Defendants believed the Counterfeit Goods to be genuine and, thus, represented them as genuine, and (iii) Defendants sale of such Counterfeit Goods, knowingly or unknowingly, are likely to cause confusion or mistake, or to deceive the general consuming public and the trade into believing that the Counterfeit Goods sold by Defendants are genuine or authorized products of Plaintiffs;

d. Defendants, individually and collectively, represent and warrant that:

Defendants, other than Shine Corp., purchased 6 units of 60 ml Counterfeit Goods, 6 units of of 125 ml Counterfeit Goods, and 6 units of 200 ml Counterfeit Goods,

  i. the purchases identified in "i." are the only purchases of any Counterfeit Goods or goods bearing any of BIO-OIL® Trademarks that any Defendant (and/or anyone acting for on their behalf) have ever made,

  ii. Defendants', other than Shine Corp., made retail sales of the foregoing 6 units of 60 ml Counterfeit Goods, 6 units of of 125 ml Counterfeit Goods, and 4 units of 200 ml Counterfeit Goods,

iii. the sales identified above are the only sales of Counterfeit Goods ever made by any Defendants (individually or collectively),

iv. the invoice provided to Plaintiffs dated 8/29/2023 under Invoice # 297 is a true and correct copy of the invoice they received from the supplier in connection with purchase of the Counterfeit Goods and that it accurately reflects the amount paid to Supplier therefore,

v. Defendants have not advertised any Counterfeit Goods outside Defendants' premises and that they have ceased importing, distributing, advertising, offering for sale and selling the Counterfeit Goods, and agree not to ever resume the same;

vi. Defendants (individually or collectively) have turned over to Plaintiffs' counsel all remaining Counterfeit Goods in their possession, custody, or control, which consisted of 2 units of 200 ml Counterfeit Goods and that they have not retained any units of Counterfeit Goods in inventory;

vii. the sole source for purchasing the Counterfeit Goods was "Beautifublic Corp" of 112 S 6th Street, New Hyde Park, NY 11040, Tel. 718-416-4000" ("Supplier") and that they dealt with a person named "Sabina" or "Sabrina" who they believe to be the owner of their Supplier.

viii. Defendants have only purchased Counterfeit Goods from the Supplier identified above, as their sole source of the Counterfeit Goods, that Defendants have no knowledge of any other source for the Counterfeit Goods, and that Defendants have not destroyed or disposed of any evidence relating to the Counterfeit Goods, or the purchase or sale thereof,

during the pendency of this suit, and will retain the original of the invoice reflected in "v" above for a period of no less than three (3) years from date of entry of this Consent Judgment.

e. Defendants have provided to Plaintiffs, full and complete evidence and information regarding their purchase of the Counterfeit Goods. Defendants represent and warrant that the invoice document provided by them reflects the sum total of the foregoing Counterfeit Goods that Defendants purchased from Supplier. Defendants acknowledge that Plaintiffs may freely use all information and evidence provided by Defendants to Plaintiffs about Defendants' purchase and sale of the Counterfeit Goods in any manner, for any purpose, and, in that regard, Defendants represent and warrant that they will, at the request of Plaintiffs, and without objection, undertake objectively reasonable actions, by way of providing declaration(s), affidavit(s), deposition testimony, or such other acts, as may be necessary, to authenticate or otherwise validate such information and/or provide evidence for use in connection with any action, suit or administrative proceeding that may be brought against Defendants' Supplier or any other third party importing, offering or selling Counterfeit Goods to Defendants' Supplier.

f. Defendants have advised Plaintiffs that they have contacted Supplier about this lawsuit and represent and warrant that they will not themselves communicate or cooperate with Supplier in connection with any action, suit or administrative proceeding that may be brought against Defendants' Supplier or any other third

party importing, offering or selling Counterfeit Goods to Defendants' Supplier, or cause or induce anyone else, to do so.

7. Defendants have agreed to pay to Plaintiffs the amount of Five Thousand U.S. Dollars ($5,000) concurrent with Defendants' delivery of the executed copy of this Stipulated Consent Judgment & Permanent Injunction Order to counsel for Plaintiffs. Payment shall be made by certified bank check or by wire transfer to an account identified by Plaintiffs.

8. Plaintiffs have been irreparably harmed by, and have no adequate remedy at law for Defendants' infringement and Plaintiffs are entitled to a permanent injunction. The balance of hardships regarding an injunction weighs in Plaintiffs' favor and the public interest does not preclude entry of a permanent injunction in this case.

9. Effective immediately as of the date this Consent Judgment is entered by the Court, Defendants and any and all of their agents, representatives, subsidiaries, directors, principals, officers, successors, assigns, and all others acting in concert or participation with them, are hereby permanently enjoined and restrained from engaging in any of the following activities:

  a. Manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, and/or selling Counterfeit Goods that bear the BIO-OIL® Trademarks or any other marks confusingly similar thereto;

  b. Further infringing Plaintiff Geneva Labs' registered BIO-OIL® Trademarks or competing unfairly with Plaintiffs by manufacturing, importing, distributing, selling, marketing, offering for sale, advertising or promoting skincare products bearing any reproduction, counterfeit, copy or colorable imitation of the BIO-OIL® Trademarks;

c. Using any false designation or representation of origin in connection with the offering for sale or sale of goods, or making any false description or representation likely to cause persons to believe that Defendants' goods are, in any way, affiliated, associated, authorized, sponsored, endorsed, or otherwise connected with Plaintiffs;

d. Affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being genuine BIO-OIL® skincare oil and from offering such goods in commerce;

e. Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiffs' business reputation or dilute the distinctive quality of any of the BIO-OIL® Trademarks;

f. Engaging in any other conduct that is likely to cause confusion, cause mistake or deceive as to the source, affiliation, connection, or association of Defendants or any of Defendants' goods with Plaintiffs;

g. Informing or, in any manner communicating any information to, Defendants Supplier relating to the Counterfeit Goods, any Plaintiff, or Plaintiff's counsel.

h. Engaging in any other activity, including without limitation, forming of any entity, acting through or directing any entity, or using any other device, which would have the effect, of circumventing, evading, avoiding or otherwise violating the prohibitions of subsections 9(a) through 9(g) hereof.

10. The permanent injunction shall remain in full force and effect unless and until modified by order of this Court.

11. Nothing herein shall be construed as precluding or preventing Defendants from obtaining and selling genuine products bearing any of the Bio-Oil® Trademarks obtained from Plaintiffs' authorized United States distributor(s).

12. In the event that the Court finds any of Defendants' representations contained in this Consent Judgment to be materially false or that Defendants have otherwise violated any provision of this Consent Judgment, the parties agree that Plaintiffs will be entitled to:

   a. a conclusive, non-appealable, finding that Defendants' infringement was knowing and willful as to all Defendants' sales both prior to and following entry of this Consent Judgment;

   b. retain Defendants' payment pursuant to subsection 7 herein as specifically forfeited by Defendants by virtue of Defendants' fraudulent misrepresentation(s), which payment shall not, therefore, be set off against any further award as against Defendants;

   c. pursue all claims for relief against Defendants, individually and severally, including but not limited to sanctions for contempt of a Court order, punitive damages for fraud, and all remedies provided by the Lanham Act, or otherwise available under any other law;

   d. recover the greater of statutory damages, or, at Plaintiffs' sole election, an amount representing three (3) times Plaintiffs' damage or Defendants' illicit profits arising from Defendants' willful sale of Counterfeit Goods prior to entry of this Consent Judgment based on Defendants' representations made in connection with this Consent Judgment);

e. recover the greater of statutory damages or, at Plaintiffs' election, an amount representing three (3) times Plaintiffs' damage or Defendants' illicit profits arising from Defendants' willful infringement and/or sanctions for violation of this Consent Judgment after entry thereof;

f. recover Plaintiffs' costs, attorneys' fees, investigatory fees and expenses that were: i) associated with commencing this litigation against Defendants, and ii) incurred by Plaintiffs both in uncovering any of Defendants' materially false representations contained in this Consent Judgment, and incurred in any subsequent action(s) relating to enforcement of this Consent Judgment; and

g. an award of such other and further relief as the Court deems just and proper.

13. Plaintiffs and Defendants agree that they shall bear their own costs and attorneys' fees (except as indicated in the preceding paragraph 11 in the event there is a violation of this Consent Judgment).

14. This Consent Judgment constitutes a final judgment pursuant to Fed. R. Civ. P. 58 concerning the subject matter of this action as between Plaintiffs and Defendants.

15. Defendants hereby knowingly waive any right to appeal from entry of this Consent Judgment.

16. Defendants acknowledge that their decision to consent to the entry of this Consent Judgment is made with the benefit of consultation with counsel with respect to the contents herein and was not influenced by any promises, representations, or statements made by Plaintiffs or anyone acting on their behalf, other than those set forth herein, and Defendants waive any ability to assert, now or in the future, reliance upon any promises, representations or statements not embodied herein.

17. This Consent Judgment shall be binding upon and shall inure to the benefit of the parties and their respective heirs, successors, assigns, and acquiring companies.

18. Upon entry of this Consent Judgment, the remaining defendants, Companies 1-5; and John Does 1-5 are dismissed, without prejudice, and this case is closed; provided, however, that this Court shall retain jurisdiction to enforce the terms and provisions of this Consent Judgment and the permanent injunction stipulated to herein.

19. By their signatures and acknowledgments below, the parties agree to be bound by the terms of this Consent Judgment.

SO ORDERED this the 7th day of February, 2024.

_____
Hon. Vernon S. Broderick
United States District Judge

The Clerk of Court is respectfully directed to close this case.

Dated: February 15, 2024

**STIPULATED AND AGREED:**

**By Defendants:**

Dated: February 7, 2024

SPTJ ENTERPRISE, INC. (d/b/a BEAUTY ZONE)

By: _____

Name: Susanna Kim

Title: president

Dated: February 7, 2024

SUZANNA KIM (a/k/a SUSANNA HYON KIM)

By: _____

Dated: February 7, 2024

SHINE CORP.

By: _____

Name: Susanna Kim

Title: President

Dated: February 7, 2024

KAP SANG KIM (a/k/a KAPSANG KIM)

By: _____

**By Plaintiffs:**

Dated: Feb 7th, 2024

GENEVA LABORATORIES LIMITED

By: _____

Name: ALASTAIR GEORGE RIPPON

Title: Commercial Director

Dated: February 7th, 2024

UNION-SWISS (PROPRIETARY) LTD.

By: _____

Name: Kim Lombard

Title: CEO